**COUCH et al. v. SOUTHERN METHODIST UNIVERSITY et al. (No. 960—4778.)**

Commission of Appeals of Texas, Section B. Dec. 5, 1928.

Thomas, Frank, Milam & Touchstone, of Dallas, for plaintiffs in error.

Ferguson, Golden & Croley and Cockrell, McBride, O'Donnell & Hamilton, all of Dallas, for defendants in error.

SPEER, J. This case presents a controversy over the interpretation of certain language in deeds of conveyance affecting "University Park Addition to the City of Dallas." Southern Methodist University, an incorporated educational institution, and certain individual owners of lots in the University Park addition, sought and obtained a temporary injunction against A. B. Couch and others to prevent them from the erection of business houses on property owned by them, located in the addition. Upon appeal that judgment was affirmed. 290 S. W. 256. This case was referred to section A of the commission, who reported, recommending reversal, whereupon it was withdrawn for further consideration.

There are several assignments of error in the application upon which the writ was granted, but each of them is to the effect that the Court of Civil Appeals erred in holding that the word "amend" in the provision for amendment with respect to the building restrictions hereafter noticed could not be construed to authorize the removal of said restrictions by plaintiffs in error. Since it is purely a matter of construction, we need make no further statement of the case than to set forth the nature of the restrictions imposed in the deeds to plaintiffs in error as owners of lots in the addition and the contemplated changes agreed upon by such owners to determine whether or not such changes are fairly within the express authority contained in the deeds.

The restrictions made a part of each deed of conveyance required a frontage of at least 60 feet, or 70 feet, if a corner lot, that the same should be used for private residence purposes only, and by white persons only. The character of materials and minimum cost of buildings were stipulated, a building line was established, a particular facing of the building was required, a uniform terrace for the front was made imperative, and numerous other restrictions with respect to the improvement and use of the lots were included.

The proposed changes by the owners represented in the present suit were radical, amounting, for the purposes of this opinion, we will say, to a removal of such restrictions and a change of the particular block or blocks involved from a reserved residential district.

Along with these restrictions in each deed of conveyance, there is the provision that:

"Provided, however, that at any time any of the above conditions, as far as they affect the property on (the streets involved in this controversy) may be amended by a vote of three-fourths of the owners of said streets, voting accorded to front foot holdings, each front foot counting as one vote."

The proposed amendment was adopted in the manner there provided for. Our task is merely one of construction, or perhaps, more accurately speaking, of interpretation, since the contention of both parties depends upon the meaning of the word "amend" in connection with the restrictions imposed in the deeds. The first rule in construing a written instrument always is to seek to arrive at the intention of the parties to the end that their purpose may be effectuated. There

are many artificial aids in the inquiry, but at last the intention of the parties as gathered from the instrument as a whole must prevail. The primary purpose of the deeds to the respective owners was to pass title to the respective lots to the grantees named therein. There was also the evident purpose to create restrictions upon the use of such property, denominated conditions, which conditions unmistakably are of a nature to affect either beneficially or otherwise the value of the estate conveyed. They were declared to be conditions running with the land for the definite time of 21 years. We are not concerned with the wisdom of such conditions, but that they are valid and enforceable agreements cannot be gainsaid, and, indeed, is not denied in this suit. But, being conditions affecting the subject-matter of the conveyance materially as they do, they are operative for the time and to the extent only as stipulated in the deeds.

The very instrument which creates the conditions likewise creates the right and the method to amend the restrictions. We take it to be that, generally speaking, the right to amend a contract implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than a complete destruction of it. Authorities for this rule are cited by the Court of Civil Appeals. It could hardly be contemplated that an agreement whereby the subject-matter of the contract might, without the further consent of the one party, be amended by the other, could be so exercised as to destroy the entire contract, or even to change the essential nature of it. But this rule is in no wise violated by the proposed amendments in this case. The express authority conferred is to amend the "conditions" so far as they affect the property conveyed, but the legal effect necessarily is to amend the contract or deed of conveyance through a change in the conditions. Now, a change of these conditions in any or all respects is not a destruction of the contract, nor does it change the essential nature of the same. It is still a deed of conveyance. The universal rule of construction of deeds, where there is uncertainty, is to adopt that construction most favorable to the grantee, for the grantor selects his own language, and the policy of the law frowns upon forfeitures, conditions, and limitations, and favors the utmost freedom of titles. 8 R. C. L. p. 1051, § 104. So that, conceding that the owners of that portion of the addition within the territory affected by this suit, have, by their proposed amendments, completely destroyed or removed the restrictions within that district, nevertheless such was clearly their right under the power conferred in the deeds. Such course has not destroyed the major contract, but the change wrought in it is in exact accordance with that contract.

Counsel for the parties have cited no case directly in point, and we have found none. The case is one of first impression, but the principles upon which we have decided it are in keeping with that public policy which favors the utmost liberty of contract and freedom of land titles from conditions or restrictions which would work a forfeiture or materially impair their values.

The construction we have given comports with the common understanding in such matters. Conditions like these are usually inserted primarily for the benefit of the owner in the sale of tracts and, secondarily, for the purchasers of such tracts; on the whole, for the benefit of all owners. So that, after all lots, or as in this case a majority thereof, are sold, the conditions become primarily for the benefit of purchasers. The deeds respect this consideration, and vest in a majority of such owners (purchasers) full power to amend the restrictions. This is not only lawful but just.

We therefore recommend, as did Section A in its report, that the judgments of the Court of Civil Appeals and of the trial court be reversed, and judgment be here rendered that the defendants in error take nothing.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiffs in error, as recommended by the Commission of Appeals.