Wayne BALDWIN, Appellant,

v.

BARBON CORPORATION, Appellee.

No. 04–88–00294–CV.

Court of Appeals of Texas, San Antonio.

June 7, 1989.

Rehearing Denied July 10, 1989.

Ed Small, Dennis R. Reese, Small, Craig & Werkenthin, Austin, for appellant.

Homer E. Dean, Jr., Roy D. Hunt, Dean & Hunt, Alice, for appellee.

Before BUTTS, BIERY and CARR, JJ.

## OPINION

BUTTS, Justice.

Wayne Baldwin, plaintiff, appeals from a take nothing judgment in favor of the Barbon Corporation, defendant, in a declaratory judgment suit. A 1985 document removed certain covenants from part of a 534 acre tract of land located in Jim Wells County. Baldwin sued to have the document declared invalid. The trial court upheld the document permitting the removal of the covenant restrictions by the 1985 document. The court filed its findings of fact and conclusions of law.

Barbon acquired the 534 acre tract in 1968 and that same year filed "Subdivision Restrictions" apparently to apply to the entire tract. At that time all of the tract was ranch land. In 1969 the surveyed subdivision plats of Barbon Estates I and Barbon Estates II were recorded. These showed that one portion of the Estates consisted of a roadway running parallel to Lake Corpus Christi shore with one tier of lake front lots on one side of the road and "inside lots" on the other. Barbon Estates occupied approximately 59 acres of the tract. Baldwin acquired his lot in Barbon Estates II in January 1978. Some parcels of waterfront property not located within the Barbon Estates had also been sold.

The Barbon Corporation reserved the right to amend the subdivision restrictions. In 1969 there was an amendment which added an additional restriction "covering the property therein described...." Another amended document was filed in 1975, still covering the entire tract. In 1982, still another amendment document was filed, which apparently applied to the entire tract of 534 acres.

The right to amend the restrictions was contained in a provision of the "Subdivision Restrictions." This same reservation was part of each new set of restrictions:

16. The directors of Barbon Corporation reserve the right in their sole discretion to amend or alter these restrictions without the consent of the owners of lots in the Subdivision until such time as all lots in the subdivision are owned by others than Barbon Corporation if it is, in the opinion of the Directors of Barbon Corporation, for the best interest of all property owners. Where the term "Barbon Corporation" is used herein, it shall mean Barbon Corporation and its successors and assigns.

It was the amending document filed on September 5, 1985, which gave rise to the present lawsuit. The 1985 amendment provided the restrictions did not apply to the entire 534 acre tract, but only to the property located in Barbon Estates I and II, plus the earlier sold waterfront properties outside the Estates.

Baldwin sued Barbon, contending that Barbon lost its right to amend the restrictions in September because it held an absolute auction on August 30, 1985, to dispose of all the property in the 534 acres which remained unsold. He also alleged that the amendment was not in the best interest of the property owners. He asked that the 1985 document be declared void.

The trial court filed many findings of fact and conclusions of law. The pertinent findings are:

9. It was the intention of Barbon Corporation to make the restrictive covenants applicable to the residential lots in Barbon Estates Subdivisions 1 and 2, but

through mistake the entire 534 acres was described as the applicable tract.

10. The restrictions were amended by instrument dated January 28, 1969, ... to add paragraph 19 requiring a minimum of 1200 square feet in any dwelling house built on a lot.

\*  \*  \*  \*  \*  \*

12. Barbon Corporation began selling residential lots in the subdivisions shortly after the plats were filed of record.

13. [A new document was filed in November 1975. It was] entitled "Amendment of *Subdivision* Restrictions" which provided in part that "All Lots in said subdivision shall be known, described and used only as *residential* lots and for no other purpose."

14. The property description attached to the amendment of 1975 contains an erroneous property description, purporting to be the 534 acre tract.

15. It was the intention of the president and authorized officer[s] of Barbon Corporation to restrict only the Barbon Estates Subdivisions 1 and 2 as residential lots and not the upland pasture land, which was at all times and still is being used as [a] cattle ranch.

There was a finding that only the board of directors was the approving authority for any proposed residences to be constructed in the two subdivisions. Further, the trial court found that Joe Hendricks and E.E. Baldwin (shown to be the plaintiff's father) had divided their properties, and Hendricks and his wife became sole owner and officers and directors of Barbon Corporation in 1976); and that the Baldwins owned land only within the Barbon Estates. The court further found that the corporation conveyed other waterfront tracts not within the Estates and expressly declared them to be subject to the residential subdivision restrictions which covered the Estates. The trial court also found that the 1982 amendment ("Amendment to Subdivision Restrictions") applied to the Estates and the waterfront properties. It found the document applied to "the one family residences built on small residential lots and was not applicable to the upland ranch land, although, through mistake, the description of the entire 534 acres was attached for location purposes only."

In finding 24 the court found that the remaining 453.508 acres were being used as a cattle ranch and not as a residential subdivision. That "Barbon Corporation ran cattle, horses, ... pigs and other animals on the upland acres and erected barns, corrals, pens, water troughs, and in no way considered the upland ranch of 453.508 acres subject to the residential restrictions."

Another finding was that the corporation had purchased more ranch land, making a total of 1136.87 acres of upland ranch property. Finding of fact 26 is that all the ranch land was reported to the appraisal district and valued as ranch land for agricultural use. Taxes were assessed based on this use from 1982 thereafter.

In finding 28 the court found that five lots in the residential subdivision were not sold at the August 30, 1985, auction but were retained by Barbon. In addition, the sale of a ranch tract "fell through," and was later sold. A similar finding was that Barbon still owned a small amount of land in the Estates including an access tract (road).

The court further found it was the title company which raised the question about the application of the restrictions. Because of the title company's concern, the September 1985 amendment was recorded. The court found that the "vast majority" of those who owned the ranch tracts and those who purchased at the auction expressly ratified the September 1985 amendment. It was found that Barbon created the Barbon Ranch Subdivision on September 6, 1985, which excluded the residential waterfront lots.

The trial court found that Barbon Corporation still owned property in the "lakeside subdivision" and the ranch land at the time of the amendment. It found that Barbon Corporation, "acting through its sole owner, Joe Hendricks, had the authority to file the original and amended restrictions." It found that the 1982 and 1985 restrictions

were intended to apply only to the residential lots on the lakeside. The court found that the sales brochure which was distributed clearly distinguished between the residential lots and the ranch acreage for sale, making it plain that the acreage could be utilized as ranch land.

The conclusions of law were that the covenants were designed for two small compact residential lakeside subdivisions; that the document should be reformed, if needed, to reflect the true intent of the subdivider; that estoppel prevented plaintiff from claiming that the covenants apply only to the ranch tracts because Baldwin and "his associates" did not object to the land being used as a ranch from 1968 until trial; that plaintiff ratified and consented to the modification of the restrictive covenants and construction of ranch facilities, thereby waiving his objections; that plaintiff is estopped to claim the 1985 amending document is a violation of the restrictive covenants; and that the 1985 amendment is not void. Lastly, the court denied attorney fees to either party.

Appellant's eighteen points of error may be grouped as follows: (1) (Points 1–6) There was no evidence or insufficient evidence to support the trial court's findings and conclusions that the original 1968 restrictions and the 1969, 1975 and 1982 restrictions were intended to and could apply only to the platted Barbon Estates lots or small lakefront lots and not to the entire 534 acres, and that Barbon was entitled to reformation of the recorded restrictions; (2) (Points 7–9) The trial court erred in finding that defendant had authority to file the 1985 amended restrictions because the amendment completely removed all restrictions and was therefore not an authorized amendment, and because a preponderance of the evidence showed that the amendment was not in "the best interest of all property owners"; (3) (Points 10–14) The trial court erred in finding that on September 5, 1985, the defendant owned property within the 534 acre tract and was therefore authorized to record the amendment, because there was no evidence or insufficient evidence to support that finding; (4) (Points 15–18) The trial court erred in find-

ing that Baldwin had waived and abandoned any applicable restrictions as to all but the platted Barbon Estates lots, and was estopped from invoking the restrictions. In addition, Barbon brings one cross-point of error: that the trial court erred in failing to award it attorney fees because appellee prevailed in the declaratory judgment action.

## RETENTION OF OWNERSHIP & AUTHORITY TO AMEND

█ In points of error ten through fourteen appellant contests the trial court's finding that Barbon was authorized to amend the restrictions on the 534 acre tract because Barbon still owned property within that tract. The power of Barbon to change the restrictions was governed by paragraph 16 in the 1982 document reserving that right.

Appellant complains of the court failing to find that after the auction of August 30, 1985, all of the property in the 534 acre tract was "owned by others than Barbon Corporation" within the meaning of paragraph 16 as set out above. The court found that Barbon had retained lots and therefore "owned" property in the tract. The evidence supports that finding. If Barbon owned property in the tract, it had authority under paragraph 16 to amend or alter the restrictions on September 5, 1985.

There was testimony that on August 30, 1985, much of the 534 acres still owned by Barbon was auctioned off, with the exception of a designated public accessway to the lake and a connecting road that reached each portion of the 534 acres. The sales contracts for the tracts sold at the August 30 auction called for the sales to close on or before September 30, 1985.

However, Hendricks, who stated he "owned Barbon Corporation," testified that at the time he executed the 1985 amendment and through the date of trial the Barbon Corporation still owned several lots in Barbon Estates I. Also, buyers at auction of several lots had not fully performed under sales contracts by September 5, 1985, the date of the amendment. Appel-

lant suggests in his brief that Hendricks' testimony means that five lots were owned by Hendricks personally, but not by Barbon Corporation, and therefore Barbon could not claim authority to amend on the basis of those five lots. However, the evidence does not sufficiently establish this distinction in order for appellant to show that the court's finding in this regard constitutes error. It was for the judge, as trier of fact, to weigh and interpret the testimony.

Appellant further argues that although many of the purchases of lots at the 1985 auction had not been closed, equitable title passed from Barbon, so that Barbon did not "own" property within the meaning of paragraph 16. Appellant points to cases where it is established that advantage inures to, and loss is borne by, the equitable interest owner. Appellant also argues by analogy that in an eminent domain context, the equitable interest owner is considered the real owner. These holdings, however, arise in different contexts than the one at hand, and in any case Barbon is correct in pointing out that appellant did not establish at trial the existence of equitable title to all auctioned lots as of September 6, 1985 in others than Barbon. *See Trans–World Bonded Warehouses & Storage, Inc. v. Garza,* 570 S.W.2d 2, 5 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.); *see also French v. Diamond Hill–Jarvis Civic League,* 724 S.W.2d 921, 923 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.).

Appellant also takes issue with the finding of the trial court that purchasers at the 1985 auction effectively ratified the 1985 amendments. We agree that this was not necessarily a meaningful finding with regard to Baldwin's claims. However, neither the finding of Barbon's continued ownership of tract lots on September 5, 1986, nor the judgment itself, need rest upon the ratification finding. Appellant's points ten through fourteen are overruled.

■ In points seven through nine appellant contends that the trial court erred because of its finding that Barbon had authority to file the 1985 amended restriction. The argument in these points is that (a) an amendment could not completely remove all restrictions from a portion of the restricted acreage and (b) under the terms of the then-existing 1982 restrictions (see paragraph 16, quoted above), the amendment made in 1985 was not "in the best interest of all property owners."

There is no question that from 1968 until 1985 Barbon had authority to amend or alter restrictions and it did so several times between 1969 and 1982. Hendricks testified that the 1985 amendments did not change any restrictions from the 1982 document as applied to the "Subdivision" land (i.e. meaning the Barbon Estates). He said the only effect of the 1985 document was to completely remove any restrictions from portions of the 534 acre tract (the ranch land).

Essentially, appellant argues that "amend or alter" cannot mean delete or remove, or at least that it cannot mean the removal of all the restrictions on a portion of land. However, there is no authority cited to indicate that Barbon could not retain the power to remove restrictions.

Appellant argues the following standard from *Hanchett v. East Sunnyside Civic League,* 696 S.W.2d 613, 615 (Tex.App.—Houston [14th Dist.] 1985, no writ) is applicable here:

> In order for a subsequent instrument to amend the original restrictive covenants governing a subdivision, three conditions must be met. First, the instrument creating the original restrictions must establish both the right to amend such restrictions and the method of amendment. *Couch v. Southern Methodist University,* 10 S.W.2d 973, 974 (Tex.Comm'n App. 1928, judgmt. adopted); *Loving v. Clem,* 30 S.W.2d 590 (Tex.Civ.App.—Dallas 1930, writ ref'd). [footnote omitted] Second, the right to amend such restrictions implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than a complete destruction of it. *Couch v. Southern Methodist University,* 10 S.W.2d at 974. Third, the amendment to the restrictions may not be illegal or against public policy. *Harrison v. Air*

*Park Estates Zoning Committee,* 533 S.W.2d 108, 111 (Tex.Civ.App.—Dallas 1976, no writ).

Paragraph 16 established the right of Barbon to amend or alter and the method of so doing. There is nothing in the record to indicate illegality or conflict with public interest in the 1985 amendments. Furthermore, since paragraph 16 gave Barbon the authority to amend or alter restrictions, removing restrictions on some portions would not be destroying the agreement within the meaning of *Couch, supra. Couch* indicated that even where amendments completely destroyed restrictions, if the power to do so was recorded in the deed, the agreement was not to be considered destroyed. 10 S.W.2d at 974. *See Bryant v. Lake Highlands Development Co. of Texas, Inc.,* 618 S.W.2d 921, 923 (Tex.Civ.App.—Fort Worth 1981, no writ).

Neither are we convinced by appellant's contention that Barbon had no authority to remove restrictions on a portion of the tract because doing so was not in the best interest of all the property owners within the meaning of paragraph 16. The operative language here is "... if it is, in the opinion of the Directors of Barbon Corporation, for the best interest of all property owners." Appellant argues that the trier of fact was required to find that Barbon exercised bad faith in forming its opinion, so as to entitle the appellant to declaratory judgment. There is nothing in the evidence to show bad faith. We offer no opinion whether proof of "bad faith" could overcome the authorizing language in paragraph 16. Points of error seven through nine are overruled.

Because we agree with the trial court in its findings that Barbon was authorized to make the 1985 amendments and that document is valid, it is unnecessary to reach the question of intent as to the scope of acreage to be covered by the restrictions in years before 1985. Neither is it necessary to determine whether Baldwin could be considered to have waived restrictions if they applied to the entire 534 acres before September 5, 1985. For the same reasons we do not address the estoppel argument (Points fifteen through eighteen). The same is true of points of error one through six. These last points are either not necessary to reach or already answered in previous discussion.

Plaintiff-grantee purchased his property subject to the Subdivision Restrictions which clearly included an express right of alteration or amendment. The effect of the 1985 amendment was to limit the residential restrictions to the two estates and waterfront properties. *Compare Bryant v. Lake Highlands Development Company,* 618 S.W.2d at 923. Thus, when the owner-grantor subdivided approximately 60 acres and applied the residential restrictions to those lots, and, further, also purportedly applied the same restrictions to the remaining land in the tract, but retained the express right to alter or amend the restrictions, the owner-grantor could amend the restrictions to limit their application so long as the owner-grantor still owned land within the original tract. The evidence supports the finding that Barbon still owned land within the tract. We hold the trial court did not err in declaring the 1985 amendatory document valid.

■ In its cross-point of error Barbon Corporation contends that it should have been awarded attorney fees as the prevailing party in the declaratory judgment action brought by Baldwin. Appellee requested attorney fees under TEX.CIV. PRAC. & REM.CODE ANN. § 37.009. That statute permits the granting or denial of attorney fees at the sound discretion of the trial court; the trial court's judgment will not be reversed on appeal absent a clear showing of abuse of discretion. *See Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). No such showing has been made by appellee in this case. The cross-point is overruled.

The judgment is affirmed.