**VICC HOMEOWNERS' ASSOCIA-TION, INC., a Texas Non–Profit Corporation, Appellant,**

v.

**LOS CAMPEONES, INC., et al., Appellees.**

No. 13–02–00006–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 19, 2004.

D. Allan Erwin, Jr., Roerig, Oliveira & Fisher, Brownsville, for appellant.

Ernesto Gamez, Jr., Law Offices of Ernesto Gamez, Jr., Brownsville, Larry Zinn, San Antonio, Sean Paul Belleville, Brownsville, for appellees.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

Appellees,[1] owners of lots in a residential subdivision, sued for a declaratory

---

1. Appellees are: Los Campeones, Inc.; Ken Plasterer, individually and as president of Los

judgment to void certain amended restrictive covenants propounded by appellant, VICC Homeowners' Association, Inc., a Texas Non–Profit Corporation ("VICC"). Appellees filed a motion for summary judgment on their declaratory judgment action and a motion for summary judgment for attorney's fees. The trial court granted both motions. In two issues, VICC contends the trial court erred in granting appellees' motions for summary judgment and in denying VICC's motion for new trial. We affirm the trial court's order granting appellees' motion for summary judgment for declaratory judgment. We reverse the trial court's order granting appellees' motion for summary judgment for attorney's fees and remand the case to the trial court for further proceedings.

## A.   BACKGROUND

The original covenants and restrictions of the Country Club Estates subdivision were created in 1969 ("1969 Covenants"). The 1969 Covenants specifically provided procedures for their amendment. The amending provision required any written agreement terminating, modifying or revising the 1969 Covenants to be filed in the Cameron County Clerk's office. VICC attempted to amend the 1969 Covenants by circulating petitions among the lot owners. Lot owners who signed the petitions requested that the 1969 Covenants be terminated. No amendments or revisions were attached to or accompanied the petitions. No subsequent agreement amending or revising the 1969 Covenants was agreed to or signed by the lot owners.

On March 15, 2001, VICC filed an "Amended Covenants and Restrictions" ("2001 Amended Covenants") in the county clerk's office. The instrument, containing eight pages of amendments and revisions to the 1969 Covenants, was verified by the secretary/treasurer of VICC. The verification stated, "a majority of owners of the Subdivision ... have executed an agreement in writing ... approving the attached amendments."

Appellees sued VICC under the Uniform Declaratory Judgments Act, seeking to have the 2001 Amended Covenants declared void.[2] Appellees moved for summary judgment on the grounds that: (1) the 2001 Amended Covenants were not passed in compliance with the requirements of the 1969 Covenants; and (2) VICC had failed to obtain a majority vote to approve amending the 1969 Covenants. Appellees also moved for summary judgment on their claim for attorney's fees. Without specifying the grounds, the trial court granted appellees' motions for summary judgment.

## B.   SUMMARY JUDGMENT

Raising six sub-issues in its first issue, VICC contends the trial court erred in granting appellees' motions for summary judgment.

We review the trial court's grant of a traditional motion for summary judgment de novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex.1994); Alejandro v. Bell, 84 S.W.3d 383, 390 (Tex.App.-Corpus Christi 2002, no pet.). In a traditional summary judgment, the movant has the burden of showing that there is no genuine

---

Campeones, Inc.; Jack Crahan and wife, Maggie Crahan; Tom Pope and wife, Wanda Pope; Louella Hefty; Marvin White and wife, Sue White; Frances Cowen Anastos; Wally Van Liere and wife, Betty Van Liere; Gerald R. Schoendorf and wife, Avis Schoendorf;

and Ren–Rex Fund, Ltd., the Community Associates at Valley Inn, Inc., a Texas Non–Profit Corporation.

2. See TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997).

issue of material fact and that it is entitled to judgment as a matter of law. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex. 1985)). In deciding whether there is a genuine issue of material fact, evidence favorable to the nonmovant will be taken as true, and all reasonable inferences made, and all doubts resolved, in its favor. *Id.* The nonmovant has no burden to respond to a traditional motion for summary judgment unless the movant conclusively establishes its cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000).

When, as in this case, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, the appellate court will affirm a summary judgment if any of the theories advanced in the motion are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Boren v. Bullen,* 972 S.W.2d 863, 865 (Tex.App.-Corpus Christi 1998, no pet.).

### 1. Objection to Summary Judgment Evidence

■ In the fifth sub-issue of its first issue, VICC complains that the trial court erred in denying its Motion to Strike Plaintiff's Summary Judgment Evidence. Specifically, VICC argues that copies of the 1965 Covenants, the 1969 Covenants, and the 2001 Amended Covenants should have been stricken from the summary judgment record because they were not authenticated.

However, the record reflects that during the summary judgment hearing, the trial court admitted the exhibits predicated on the county clerk's authentication. Appellees filed the certified records the same day. Because this was within the trial court's discretion, we overrule the fifth sub-issue of VICC's first issue. *See Garcia v. Willman,* 4 S.W.3d 307, 311 (Tex. App.-Corpus Christi 1999, no pet.) (proponent of summary judgment evidence must be given opportunity to cure defect in summary judgment evidence).

### 2. Restrictive Covenants

In the first sub-issue of its first issue, VICC contends the trial court erred in granting appellees' motion for summary judgment for declaratory judgment, thereby declaring the 2001 Amended Covenants void.

■ We must first determine if the trial court correctly interpreted the amending provision of the 1969 Covenants. Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons,* 966 S.W.2d 474, 478 (Tex.1998). In construing a restrictive covenant, the court's primary task is to determine the intent of its framers. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 657 (Tex. 1987). Like a contract, covenants are "unambiguous as a matter of law if [they] can be given a definite or certain legal meaning." *Pilarcik,* 966 S.W.2d at 478. The language of the restrictive covenant may not be enlarged, extended, stretched, or changed by construction. *Wilmoth,* 734 S.W.2d at 657. Rather, the words and phrases used in the covenant must be given their generally accepted meaning. *Id.* at 657–58. To ensure that a covenant's provisions are given effect, we interpret the intent of the provisions by giving liberal construction to the covenant's language. *Pheasant Run Homeowners Ass'n, Inc. v. Kastor,* 47 S.W.3d 747, 750 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *see also* TEX. PROP.CODE ANN. § 202.003(a) (Vernon 1995) ("A restrictive covenant shall be liberally construed to give effect to its purposes and intent.").

■■ For a subsequent instrument to amend the original restrictive covenants governing a subdivision, three conditions must be met. First, the right to amend and the method of amendment must be expressly provided for in the instrument creating the original restrictions. *Dyegard Land P'ship v. Hoover,* 39 S.W.3d 300, 313 (Tex.App.-Fort Worth 2001, no pet.). Second, the right to amend implies only those changes contemplating a correction, improvement, or reformation of the agreement rather than complete destruction of it. *Hanchett v. E. Sunnyside Civic League,* 696 S.W.2d 613, 615 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.). Third, the amendment may not be illegal or against public policy. *Miller v. Sandvick,* 921 S.W.2d 517, 521 (Tex.App.-Amarillo 1996, writ denied).

The amending provision of the 1969 Covenants provided:

> Upon the expiration of 25 years from date of the execution of this instrument, the owners of a majority of the lots within the Subdivision may execute and acknowledge an agreement in writing terminating, modifying or revising these restrictions and covenants and file the same in the office of the County Clerk of Cameron County, Texas; thereafter said covenants and restrictions shall be null and void, or be modified or revised as prescribed in such agreement.

Here, neither party claims that the language of the amending provision is ambiguous. Thus, giving the applicable language its plain and ordinary meaning, the amending provision establishes both the right to amend the 1969 Covenants and the method for accomplishing such an amendment. When the amending provision is read as a whole, and in the light of its purpose, we conclude it was the intent of the drafters of the 1969 Covenants that any termination, modification, or revision of the covenants be agreed to by a majority of the lot owners. Thus, VICC was required to obtain the agreement of a majority of the lot owners to either terminate, modify, or revise the 1969 Covenants. Further, any modification or revision of the 1969 Covenants was required to be "as prescribed in such agreement."

Prior to filing its 2001 Amended Covenants, VICC circulated petitions to all the homeowners of record in the subdivision. The circulated "Petition to Revise Restrictions and Covenants" provided in relevant part:

> [w]e, the undersigned, owners of Lots/ Units listed below, pursuant to [the amending provision], hereby executed [sic] and acknowledge our agreement to terminate the Restrictions and Covenants and to file this agreement of termination in the office of the County Clerk of Cameron County, Texas.

Places were provided for the lot owners to sign either in favor of or opposed to the "petition to revise." No amendments or revisions were attached to or accompanied the petitions. No subsequent agreement amending or revising the 1969 Covenants was agreed to or signed by the lot owners.

When VICC filed the 2001 Amended Covenants, the instrument purported to be an agreement to amend or revise the 1969 Covenants. The verification, by the secretary/treasurer of VICC, stated, "a majority of owners of the Subdivision ... have executed an agreement in writing ... approving the attached amendments...."

However, a majority of the homeowners had not "executed an agreement in writing approving the attached amendments made to the [1969 Covenants]." The record contains no evidence that the homeowners who signed the circulated petition ever saw what was eventually filed with the county clerk as the 2001 Amended Covenants. At most, by signing the circulated petition,

the homeowners agreed only to terminate the 1969 Covenants. Because VICC attempted to modify or revise the 1969 Covenants without the consent of a majority of the landowners, we conclude that VICC failed to comply with the method of amendment, that such action was contrary to the intention of the amending provision of the 1969 Covenants, and thus, is of no effect.

Accordingly, we hold the trial court did not err in granting summary judgment and declaring that the 2001 Amended Covenants are void. We overrule the first sub-issue of VICC's first issue.

### 3. Attorney's Fees

■ In the fourth sub-issue of its first issue, VICC complains of the trial court's award of attorney's fees because appellees' motion for summary judgment on attorney's fees had no evidence of attorney's fees attached and appellees produced no such evidence before the trial court signed its order granting summary judgment.[3]

■ As a general rule, the trial court may consider only that summary judgment proof that was properly on file at the time of the hearing, or filed thereafter and before judgment with permission of the court. TEX.R. CIV. P. 166a(c); see Allen v. Wachtendorf, 962 S.W.2d 279, 281 (Tex. App.-Corpus Christi 1998, pet. denied). On review, the appellate court will not consider late-filed summary judgment evidence presented without leave of court. See J.E.M. v. Fidelity & Cas. Co., 928 S.W.2d 668, 672 (Tex.App.-Houston [1st Dist.] 1996, no writ); see also Valores Corporativos, S.A. de C.V. v. McLane Co., 945 S.W.2d 160, 162 (Tex.App.-San Antonio 1997, writ denied) (reviewing court could not consider summary judgment evidence

filed three days after judgment was signed).

On August 30, 2001, the trial court heard and considered appellees' motion for summary judgment on attorney's fees. The trial court's order granting summary judgment and awarding appellees attorney's fees of $33,805.47 was signed on October 22, 2001. On December 3, 2001, appellees filed a "Motion to Qualify Attorney's Fees." On December 14, 2001, the trial court held an evidentiary hearing, and one of appellees' attorneys gave oral testimony regarding appellees' attorney's fees.

The record reflects that prior to October 22, 2001, appellees did not file any affidavits or other summary judgment evidence in support of their motion for summary judgment on attorney's fees. Accordingly, we conclude the trial court erred in signing an order on October 22, 2001, granting appellees' motion for summary judgment and awarding attorney's fees in the amount of $33,805.47.

Appellees argue that on December 14, 2001, they presented oral testimony to support the motion for summary judgment and award of attorney's fees. However, rule 166a(c) does not allow oral testimony to be received at a summary judgment hearing. TEX.R. CIV. P. 166a(c). Further, appellees presented this evidence after the trial court signed the order granting summary judgment. Therefore, the trial court could not have considered this evidence as support for its decision to grant the motion and award attorney's fees. See J.E.M., 928 S.W.2d at 672; McLane, 945 S.W.2d at 162.

We conclude that appellees have not met their burden of showing they are entitled

---

**3.** Under section 37.009 of the civil practice and remedies code, the trial court has discretion to award attorney's fees in declaratory judgment actions when such fees are equitable and just. See TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997).

to summary judgment on attorney's fees, as a matter of law. *See Grinnell,* 951 S.W.2d at 425. Therefore, we hold that the trial court erred in granting appellees' motion for summary judgment on the issue of attorney's fees. We sustain the fourth sub-issue of VICC's first issue.

In light of our disposition of the first, fourth, and fifth sub-issues of VICC's first issue, it is not necessary to address the remaining sub-issues and issue presented by VICC.

### C. DISPOSITION

We affirm the trial court's order granting appellees' motion for summary judgment for declaratory judgment. We reverse the trial court's order granting appellees' motion for summary judgment for attorney's fees and remand the case to the trial court for further proceedings.

Concurring Opinion by Justice CASTILLO.

Justice CASTILLO, concurring.

The majority affirms the summary judgment in appellees' favor and reverses and remands only the attorney fee award. I agree that remand is proper.

The purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1997). In its entirety, the summary judgment order at issue states:

### ORDER

On the 22 day of October, 2001, came on to [sic] considered Plaintiffs' Motion for Summary Judgment on their Petition for Declaratory Judgment. After considering the pleadings, the record and the evidence, this Court is of the opinion that said Motion for Summary Judgment should be granted.

IT IS THEREFORE ORDERED, that Plaintiffs' Motion for Summary Judgment on their Petition for Declaratory Judgment is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' [sic] be GRANTED attorneys fees in the amount of $33,805.47.

SIGNED on this the 22 day of October, 2001

This order does not declare the rights of the parties on any of the requested grounds in appellees' live pleading or in their motion for summary judgment. Thus, remand is appropriate to secure the trial court's declaration of the rights of the parties. *See Garcia v. Comm'rs Court of Cameron County,* 101 S.W.3d 778, 785 (Tex.App.-Corpus Christi 2003, no pet.); *Texas Water Comm'n v. Lindsey,* 850 S.W.2d 183, 187 (Tex.App.-Beaumont 1992, writ denied).

Moreover, an award of attorney fees must be based on statutory authority. We strictly construe statutes providing for recovery of attorney fees. *City of Austin v. Travis County Landfill Co.,* 25 S.W.3d 191, 206–07 (Tex.App.-Austin 1999), *rev'd on other grounds,* 73 S.W.3d 234 (Tex. 2002) (citing *New Amsterdam Cas. Co. v. Tex. Indus., Inc.,* 414 S.W.2d 914, 915 (Tex.1967) and *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893, 895 (Tex.1962)). Any award of attorney fees in this case must find its authority in the Uniform Declaratory Judgments Act. In a declaratory judgment action, the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE § 37.009 (Vernon 1997). Whether to award attorney fees under the Act is within a trial court's sound discretion. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Prevailing-party

status is not required. *State Farm Lloyds v. C.M.W.*, 53 S.W.3d 877, 894 (Tex.App.-Dallas 2001, pet. denied) (*citing Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637–38 (Tex.1996)). Nonetheless, while the amount of the fee awarded is discretionary, that discretion is limited by the Act's requirements that the award be "reasonable and necessary" and "equitable and just." TEX. CIV. PRAC. & REM.CODE § 37.009 (Vernon 1997); *Bocquet*, 972 S.W.2d at 21. Reasonableness and necessity are matters of fact. *Bocquet*, 972 S.W.2d at 21. Equity and justice are committed to a trial court's discretion. *Id.* A trial court may abuse its discretion by ruling arbitrarily, unreasonably, or without regard to guiding legal principles. *Id.* In other words, the Uniform Declaratory Judgments Act "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Id.* In reviewing an attorney fee award under the Act, this Court must determine both whether: (1) the trial court abused its discretion by awarding fees based on insufficient evidence of reasonableness or necessity; and (2) the award was inequitable or unjust. *Id.* "Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Id.* Thus, the Act requires a multi-faceted review involving both evidentiary and discretionary matters. *Id.*

Here, the summary-judgment order does not declare the rights of the parties. Nonetheless, it awards attorney fees to appellees, the prevailing parties in the sense that the order granted appellees' motion for summary judgment. The parties agree no summary-judgment evidence on attorney fees was before the trial court at the time it awarded the fees. Indeed, as a general rule, the trial court may consider only summary-judgment proof properly on file at the time of the hearing. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex.1992). For the reasons stated by the majority, at the time the trial court signed the summary judgment order, there was no evidence in the record to support the amount of reasonable and necessary attorney fees. However, the trial court granted appellees leave to prove up their attorney fees at a subsequent hearing held concurrently with the hearing on VICC's motion for new trial. The trial court did not rule on the merits of appellees' prove-up of their attorney fees, but it did not change the amount of attorney fees awarded by the summary judgment order, either.

A claim for attorney fees under the Uniform Declaratory Judgments Act is not severable from the merits of the declaratory judgment action itself. *See Dalisa, Inc. v. Bradford*, 81 S.W.3d 876, 880 (Tex.App.-Austin 2002, no pet.). " 'That a suit for the statutory attorney's fees as a separate action could not be maintained is evident from the wording of the statute.... The attorney's fees, while not costs, partake of the nature of the costs of suit and are assessed in accordance with the judgment' reached in the proceeding." *Dalisa, Inc.*, 81 S.W.3d at 881 (quoting *Huff v. Fidelity Union Life Ins. Co.*, 158 Tex. 433, 312 S.W.2d 493, 501 (1958)). I conclude that the reasonableness, necessity, equitableness, and justness of an award of attorney fees in a declaratory judgment action necessarily are related to the trial court's declaration of the rights of the parties. I would hold that an award of attorney fees in this case must abide the declaration itself. Thus, only after the trial court declares the parties' rights under the Uni-

form Declaratory Judgments Act would I address whether the evidence is factually sufficient to support a finding that the fees are reasonable and necessary and determine if the award is equitable and just.