United States Court of Appeals
Fifth Circuit

**F I L E D**

September 20, 2006

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 05-20986
Summary Calendar

_____

JOSEPH A. AUFMAN; JUDITH A. AUFMAN,

Plaintiffs-
Counter Defendants-
Appellants,

VERSUS

GOVERNMENT OF JAPAN,

Defendant-
Counter Claimant-
Appellee.

_____

Appeals from the United States District Court
for the Southern District of Texas
m 4:04-CV-3449

_____

Before SMITH, GARZA, and PRADO,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances
(continued...)

Joseph and Judith Aufman appeal a summary judgment for defendant and counter claimant the Government of Japan. The Aufmans filed this matter in state court seeking a declaratory judgment that a deed restriction

_____

[*](...continued)
set forth in 5TH CIR. R. 47.5.4

prohibiting construction of a single family residence on Lot 16 of the Farnham Park subdivision of the City of Piney Point Village in Harris County, Texas, is unenforceable. The Government of Japan removed to federal court pursuant to 28 U.S.C. § 1441(d).

The district court held that (i) the restrictive covenant is valid, binding, and not an improper amendment of the Farnham Park restriction; (ii) the Government of Japan is entitled to enforce the covenant; (iii) the covenant is also enforceable as an equitable servitude; (iv) a purported release of the covenant lacked sufficient clarity to be enforceable and was not supported by consideration; and (v) the Government of Japan is not estopped from enforcing the covenant. Finding no error, we affirm.

## I.

In 1972, James Goette acquired Lots 16 and 17 in the Farnham Park subdivision and conveyed Lot 16 under a general warranty deed (the "Goette deed") to William and Norma Bondesen, who had purchased adjoining Lot 15. This deed was expressly subject to the Farnham Park Subdivision deed restrictions ("FP Restrictions").

The FP Restrictions are the embodiment of a uniform plan of development applying to the thirty lots of Farnham Park for the purpose of "improvement, development, and sale of the lots and building sites in Farnham, for the benefit of the present and future owners thereof . . . ." According to paragraph 6,

[t]he owner or owners of adjoining lots may consolidate the lots into one building site, or may resubdivide such lots into two or more building sites, provided the resubdivision does not result in more building sites than the number of platted lots which are resubdivided and each resulting building

site is at least as large as the smallest of the platted lots which are re-subdivided. Each resulting building site shall be treated as a lot for the purposes of these restrictions and the provisions of this instrument, unless a contrary intent is indicated.

To amend the FP Restrictions, an instrument must be filed in the county clerk's office signed by at least 75% of the owners of the lots in the subdivision.

In addition to the FP Restrictions, the Goete deed also included a restrictive covenant limiting the use of lot 16. This covenant, clause 12 of the Goette deed, states that "Grantees [the Bondesens] agree for themselves and their successors in title that Lots 15 and 16, Block one (1), Farnham Park, Harris County, Texas will be used for no more than one single family dwelling and appurtenances thereto." This restrictive covenant was executed for the benefit of Lot 17 to reduce the density of housing in the area covered by the adjoining Lots 15 and 16. When the Goette deed was executed, and at all times since, a single-family dwelling has existed on Lot 15, leaving Lot 16 restricted and greatly enhancing the desirability of Lot 17.

In 1975, after building a house on Lot 17, Goette sold the lot and its residence to the Government of Japan, which has since used it as the residence of its Consul-General. In 1992 the Bondensens made a written request that the Consul-General sign a "Waiver of Restriction" that would release the property from restriction 12. Such a release would permit the Bondesens to separate the two lots and build a single-family dwelling on Lot 16.

The Consul-General declined to sign the waiver, explaining in a letter that he "had received instruction from the home government

2

that it was not in a position to consent to the 'Waiver of Restriction.'" Though the "Waiver of Restriction" acknowledged that Goette had no present interest in Lots 16 and 17 and that Restriction 12 had only inured to his benefit as owner of lot 17, the Bondesens then obtained from Goette and filed a "Release" that purported to "release forever [the Bondesens] and their successors in title to Lots 15 and 16 . . . from any obligation whatsoever to said item 12."

Six years later, the Bondesens again requested that the Consul-General release the property from restriction 12. The request was by a more informal letter that did not specifically mention restriction 12, but merely stated that the Bondesens wished to "re-plat" the lots. It contained no request for a release or waiver of the covenant, no expression of an intent to re-subdivide lots 15 and 16, and no expression of an intent to build a residence on Lot 16 in contravention of the covenant. The only reason the letter gave was that the Consul-General was "[the Bondesans] closest neighbor on [their] east side." The Consul-General acquiesced to the "re-plat."

About nine years after the Government of Japan first declined to waive its rights under Restriction 12, the Bondesans sold lot 16 to Stonebridge Homes, Inc. ("Stonebridge"). The general warranty deed to Stonebridge made no reference to Restriction No. 12 contained in the Goette deed. Stonebridge in turn sold Lot 16 to the Aufmans by general warranty deed on October 3, 2003, "subject to any and all . . . valid restrictions . . . if any, to the extent, but only to the extent that they are reflected by the records of the Office of the County Clerk . . . ."

The Aufmans intended to build a house on Lot 16 and have asserted that their plans were approved by Piney Point Village and the Farnham Park Homeowners' Association. When they began clearing Lot 16 in preparation for construction of a single-family dwelling, counsel for the Government of Japan notified them that construction of a residence on Lot 16 would violate Restriction No. 12 in the Goette deed, which limited the use of Lots 15 and 16 *together* to no more than one single family dwelling, and that the Government of Japan, as record owner of Lot 17, insisted that the Aufmans comply with the restriction.

The Aufmans sued for a declaratory judgment "interpreting the deeds and the [Goette 1992] Release . . . and decreeing that Plaintiffs are free to construct a residence on Lot 16, and that any restrictions created with respect to Lot 16 by the deed [from Goette] are ineffective and unenforceable or have been released by virtue of the [Goette 1992] Release." The district court held in favor of the Government of Japan by denying the Aufmans' motion for summary judgment and granting the Government of Japan's motion for summary judgment.

II.

We review a summary judgment *de novo*, applying the same standard of review as did the district court. *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2005) (citing *BellSouth Telecomm., Inc. v. Johnson Bros. Group*, 106 F.3d 119, 122 (5th Cir. 1997)). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Minter v. Great Am. Ins. Co.*, 423 F.3d 460, 465 (5th Cir. 2005). Summary judgment is appropriate where, after such inferences have been made, the record demonstrates that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476

(5th Cir. 2001). The district court granted summary judgment on the ground that, as a matter of law, restriction No. 12 of the Goette deed is valid and enforceable against the Aufmans as a covenant running with the land or as an equitable servitude on Lot 16, with Lot 17 being the dominant estate.

### III.

The Aufmans contend that enforcement of restriction 12 would violate clause 6 of the original FP deed restrictions, so restriction 12 should be declared invalid. They argue that paragraph 1 of the FP deed restrictions permits the construction of one single-family residence on each lot or building site in Farnham Park. That paragraph states that "Lots and building sites in Farnham shall be used for residential purposes only, and no buildings shall be placed on any such lot or building site except one single family residence . . . ."

Thus, according to the Aufmans, a restrictive covenant preventing the erection of a single-family dwelling on any Farnham Park building site would violate the permission to do so granted by the FP restrictions. The Aufmans then reason that when the Bondesens sold Lot 16 to the Aufmans' predecessors in title, they effectively re-subdivided the two lots, thereby creating two separate "building sites."" They conclude that the creation of two separate building sites by this sale abrogated restriction 12 because the FP restrictions require that each be permitted to contain a single-family dwelling.

"A developer generally has the unilateral right to impose on its subdivision, in the first instance, any restrictions that it chooses . . . ." *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 689 (Tex. App.SSHouston [1st Dist.] 2003, pet. denied). Neither party disputes that the restrictive covenants in the original FP

restrictions are valid. Thus, for enforcement of restriction 12 of the Goette deed to be valid, it must comply with the requirements of the FP deed restrictions. Though courts do not favor covenants restricting the free use of land, such restrictions will be enforced where they are confined to a lawful purpose and are clearly worded. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 657 (Tex. 1987) (citing *Davis v. Huey,* 620 S.W.2d 561 (Tex. 1981)).

"All doubts must be resolved in favor of the free and unrestricted use of the premises, and the restrictive clause must be construed strictly against the party seeking to enforce it. *Id.* (citing *Brown v. Wehner*, 610 S.W.2d 168, 170 (Tex. App.SSHouston [1st Dist.] 1980, writ ref'd n.r.e)). Furthermore, words used in the covenant may not be enlarged, extended, stretched, or changed by construction; they must be given their commonly accepted meaning. *Id.* (citing *Curb v. Benson*, 564 S.W.2d 432, 433 (Tex. App.SSAustin 1978, writ ref'd n.r.e)). "[I]n construing a restrictive covenant, the court's primary task is to determine the intent of its framers." *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 308 (Tex. App.SSFort Worth 2001, no pet.) (citing *Wilmoth*, 734 S.W.2d at 657).

We must ascertain the intent of the original FP deed restrictions to decide whether enforcement of restriction 12 of the Goette deed would violate them. It is evident that neighborhood developers imposed these restrictions to facilitate the creation of an ordered, residential community. Many of the FP restrictions work to limit the housing density of the neighborhood and to homogenize the appearance of the dwellings within it.

Paragraph 12 does not offend either of these purposes. The Aufmans point out that the FP restrictions state that they are in place

4

to "create and carry out a uniform plan for the improvement, development, and sale of lots and building sites in Farnham, for the benefit of the present and future owners thereof." That language encouraging development, however, does not in and of itself imply that the neighborhood developers intended that no lot be encumbered by a restriction such as number 12. To the contrary, property owners are explicitly given the right to consolidate multiple lots by clause 6 of the FP restrictions, thereby limiting the use of some of the lots. The language the Aufmans rely on in paragraph 1 of the FP restrictions is designed to ensure that property in Farnham Park be used only for residential purposes, not to guarantee a right to build on each lot or building site.

We agree with the district court that, even though the Bondesens' sale of Lot 16 amounted to a "re-subdivision" of Lots 15 and 16 into two "building sites," the FP Restrictions do not require that the Aufmans build or be able to build a residence on Lot 16. We therefore do not agree with the Aufman's contention that the sale of Lot 16 by the Bondesens abrogated the restrictive covenant imposed on the property by restriction 12 of the Goette deed.

### IV.

The Aufmans aver that even if restriction 12 does not violate clause 6 of the FP restrictions, it is invalid as an improper amendment of those restrictions. The district court held that the Farnham Park restrictions do not specify that a lot owner must be able to build a residence on a particular lot or building site, and therefore a covenant preventing the building of a lot on a particular building site is not an amendment of the FP restrictions.

As stated in their first contention, the Aufmans argue that paragraph 1 of the FP restrictions does permit the construction of a resi-dence on each building site, and therefore restriction 12 acts as an amendment to the original FP restrictions. Furthermore, because restriction 12 limits the combined use of Lots 15 and 16 to no more than one single-family dwelling, and Clause 6 of the FP restrictions expressly permits consolidated lots to be re-subdivided into two or more separate building sites, the Aufmans aver that enforcement of the Goette covenant permanently binds the two lots together, preventing the separation otherwise permitted by (and therefore amending) Clause 6.

For the original restrictive covenants governing a subdivision to be amended, three conditions must be met. *VICC Homeowners' Ass'n, Inc. v. Los Campeones, Inc.*, 143 S.W.3d 832, 836 (Tex. App.—Corpus Christi 2004, no pet.). First, the original instrument creating the restrictive covenants must expressly grant the right to amend those covenants. *Id.* (citing *Dyegard*, 39 S.W.3d at 313). Second, any amendment may only correct, improve, or reform the agreement rather than completely destroy it. *Id.* (citing *Hanchett v. Sunnyside Civic League*, 696 S.W.2d 613, 615 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.)). Finally, "the amendment may not be illegal or against public policy." *Id.* (citing *Miller v. Sandvick*, 921 S.W.2d 517, 521 (Tex. App.—Amarillo 1996, writ denied)).

The Aufmans argue that this case is analogous to *Youssefzadeh v. Brown*, 131 S.W.3d 641, 644-45 (Tex. App.—Texarkana 2004, no pet.), in which a unilateral amendment of developer-imposed restrictive covenants did not utilize the provided amendment process and was therefore of "no force and effect." The Aufmans state that restriction 12 of the Goette deed, like the unilateral amendment in *Youssefzadeh*, amends the FP Restrictions by pre-

venting the re-subdivision of lots 15 and 16 as permitted by Clause 6 of the FP Restrictions. It thereby prohibits the construction of a single family dwelling on a building site that, as stated, the Aufmans believe the FP restrictions to permit. Therefore, because it was not recorded as required by the designated FP amendment process, it must be declared invalid.

We agree, however, with the district court that the owner's unilateral attempt in *Youssefzadeh* "to change the characterization of [its particular block] from commercial use to part commercial and part residential use is distinguishable from the instant case. *Id.* at 643. Clause 12 of the Goette deed functions within the scope of the FP Restrictions, a fact that the district court aptly points out. We find no error in that court's reasoning that "because the combination of the two lots for use as one dwelling site is in harmony with what is expressly declared as possible in the FP Restrictions, the individual owners are free to impose a restriction such as Restriction No. 12 in the [Goette] deed."

The two lots can still be subdivided in accord with clause 6 of the FP restrictions, but this must be done in compliance with the means by which the lots were originally combined. Therefore, the district court is correct that clause 12 of the Goette deed is not an improper amendment of the FP restrictions.

## V.

The Aufmans reason that the Government of Japan is estopped from enforcing restriction 12 of the Goette deed based on its Consul-General's approval of the Bondesens' letter requesting a "re-plat." The Aufmans contend that the approval of the "re-plat" constituted a release of restriction 12 and that the Bondesens detrimentally relied on the Consul-General's acquiescence to the "re-plat" by entering into a settlement agreement with the City of Piney Point vacating the re-platted combination of Lots 15 and 16.

Release agreements "must be supported by valid consideration," such as "a benefit to the releasor or a detriment to the person released." *Tamez v. Southwestern Motor Trans., Inc.*, 155 S.W.3d 564, 571 (Tex. App.—San Antonio 2004, no pet.). The doctrine of estoppel may be invoked where the conduct of one of the parties has induced action in reliance on it and where it would operate as a fraud to allow the party later to disavow the conduct. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 721 (Tex. App.—Dallas 2004, no pet.). The doctrine of quasi estoppel does not require that a representation be made, nor does it require reliance by the party seeking to assert it. *El Paso Nat'l Bank v. Southwest Numismatic Inv. Group, Ltd.*, 548 S.W.2d 942, 948 (Tex. Civ. App.—El Paso 1977, no writ). This doctrine precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken. Quasi estoppel applies where it would be unconscionable to allow a person to maintain a position inconsistent with one to which it has already acquiesced. *Steubner Realty 19 v. Cravens Road 88*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ).

The district court properly concluded that no consideration for the claimed release has been established. Furthermore, neither doctrine of estoppel is applicable, because the Consul-General's conduct does not constitute a representation of, or an acquiescence in, a release of Restriction No. 12. The letter noted that the Bondesens' property had been damaged by flood waters and that they were unsure what course of action to take as to the

structures on Lots 15 and 16.  But the letter lacked any indication of an intent to build a dwelling on Lot 16 while maintaining a dwelling on Lot 15, and it failed entirely to mention Restriction No. 12.  By agreeing to the "replat," the Consul-General did not acquiesce in a release of this restriction, and therefore the Government of Japan's act of seeking its enforcement is not an inconsistent act or representation.

AFFIRMED.