# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00364-CV

**Ray Hawkins, Appellant**

**v.**

**John Morrison and Sharon Morrison, Appellees**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
## NO. 35.001, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The issue presented concerns the interpretation of language in restrictive covenants of the Northwest Oaks subdivision, an unrecorded subdivision located in Burnet County. Facing competing motions for summary judgment, the trial court rendered judgment in favor of appellees John Morrison and Sharon Morrison, property owners in the subdivision, that the restrictions expired in May 2003 and that a subsequent declaration filed in the public records of Burnet County in March 2004 by appellant Ray Hawkins purporting to amend and extend the restrictions was void. The trial court also granted the Morrisons' request to remove cloud on their title and for attorney's fees in the amount of $2,600. In three issues, Hawkins contends that the trial court erred in its summary judgment rulings and its award of attorney's fees to the Morrisons. For the reasons that follow, we affirm the trial court's judgment.

## BACKGROUND

The developer of the Northwest Oaks subdivision, Mark Fox, filed a declaration of covenants, conditions, and restrictions in May 1978 in the public records of Burnet County. The restrictive covenants included use restrictions for the tracts of land in the subdivision such as limiting the tracts to residential purposes and setting minimum floor areas and tract size. The "Duration and Amendment" provision states that the "restrictions shall be effective for a period of twenty-five years" and that they may be extended for successive periods of ten years. Pursuant to this provision, the parties agree that the restrictions expired on May 2, 2003. The provision also provides the procedure for altering, cancelling, or extending the restrictions.

John and Sharon Morrison purchased their property in the subdivision in December 2003. Around the same time, Hawkins, who was president of the Northwest Oaks Property Owners' Association, Inc., sent ballots to members of the association and other property owners in the subdivision entitled "Ballot for the Renewal of Covenants and Restrictions, Northwest Oaks Subdivision" requesting the owners to vote whether "to keep the restrictions for ten more years" and whether to amend two provisions of the use restrictions. The Morrisons did not receive a ballot.

After receiving executed ballots from purported property owners in the subdivision voting to extend the restrictions, Hawkins filed a document on March 9, 2004, titled "Declaration of Covenants, Conditions, and Restrictions for Northwest Oaks" in the public records of Burnet County. The document substantially tracks the language of the original restrictions filed in 1978, including the whereas clause reciting that Mark Fox owns all of the real property in the subdivision.

2

The document differs from the original restrictions by incorporating the two proposed amendments to the use restrictions and changing the language of the "Duration and Amendment" provision. The provision was changed by substituting "10 years" for "25 years" as the duration period for the restrictions. This document purports to be effective for ten years from March 9, 2004.

Disputes arose between the parties concerning the validity of the original restrictions and the declaration filed by Hawkins. The Morrisons filed suit in April 2008 against Hawkins, individually and as the purported president of the association, to remove the declaration filed by Hawkins in 2004 as a cloud on their property's title and for declaratory relief and attorney's fees. They contended that the 2004 declaration was fraudulent and not valid.

The Morrisons, along with other property owners in the subdivision, also filed a document in the public records of Burnet County in October 2008 entitled "Declaration of the Expiration of Covenants, Conditions, and Restrictions for North West Oaks Subdivision." This declaration states that the "undersigned . . . compose 28% . . . of the present owners of property located in the . . . unrecorded subdivision" and declare that "they do not agree to the extension" of the original restrictions, their property "is not subject to any subdivision restrictions of any kind," and the association "has no right to take any action to enforce any subdivision restrictions or claimed assessments against them or their property."

Hawkins answered the suit, asserting estoppel as one of his affirmative defenses. He also counterclaimed for a declaratory judgment that the declaration that he filed in 2004 was valid and that the declaration filed by the Morrisons and other property owners in 2008 was void and/or invalid.

The parties thereafter filed competing motions for summary judgment, joining issue with the validity of the declaration filed by Hawkins in 2004 and the declaration filed by the Morrisons along with other property owners in 2008. Hawkins contended that: (i) the plain language of the original restrictions allowed for extension and amendment within a reasonable time after expiration of the initial period of 25 years, that the time period between May 2003 and March 2004 was a reasonable time, and that the procedure followed by the association—voting by ballot—was valid; (ii) the declaration that Hawkins filed in 2004 applied to the Morrisons' property; and (iii) the Morrisons' claims were barred by estoppel because they ratified the association's actions. Hawkins also filed a supplemental motion concerning the Morrisons' claim that the declaration filed in 2004 was fraudulent. In the supplemental motion, he contended that this claim was frivolous.

In addition to the declarations filed in 2004 and 2008, Hawkins's summary judgment evidence included the articles of incorporation and bylaws of the association, an affidavit from Hawkins, letters sent by John Morrison to the association, and minutes from association meetings. Hawkins averred that he was the president of the association from August 2003 to August 2004, that ballots were sent in December 2003 to the members of the association as well as to other property owners in the subdivision "to vote for or against the renewal and amendment" of the original restrictions, and that "[o]ver 75% of the property owners voted in writing and by their signature to extend the [original restrictions] for a period of ten years." Copies of the executed ballots were attached to Hawkins's affidavit. The minutes from the association meetings reflect that John Morrison was present and participated in the meetings.

4

The Morrisons responded and sought summary judgment that the declaration filed by Hawkins in 2004 was not valid because it "purports to be restrictions placed on property by the sole owner of said property" at a time when the property was no longer owned by the developer and, specifically as to their property, because when they purchased their property, the original restrictions had terminated and nothing was on file in the public records to show that the restrictions were or would be extended. They further challenged the voting procedure utilized to purportedly extend the restrictions and the significance of John Morrison's involvement with the association. Their summary judgment evidence included affidavits from John Morrison and their attorney on attorney's fees, the deed for the Morrisons' property, and correspondence sent by the Morrisons to Hawkins and the trial court in which they challenge the validity of the 2004 declaration. John Morrison averred that he and his wife purchased their property in December 2003 and that he has "continuously been informing each and every President, Secretary and Treasurer of the Northwest Oaks Property Owners Association that the Restrictions were not valid," including communicating in writing with the association as well as with the trial court, concerning the validity of the declaration filed by Hawkins in 2004.

After a hearing, the trial court granted the Morrisons' motion for summary judgment and their request for attorney's fees in the amount of $2,600. In its judgment, the trial court found the declaration filed by Hawkins in 2004 was a "void document" and that it was "hereby removed as a cloud on the Plaintiffs' title together with any recorded documents filed to supplement said document." The trial court also found that the original restrictions "expired under their own terms on May 2, 2003 and that any attempted extension of these restrictions after said expiration is void."

5

The trial court further found that the declaration filed by the Morrisons and other property owners in 2008 "correctly establishes the law pertaining to the restrictions and should not be cancelled and should remain in the Official Public Records of Burnet County, Texas." This appeal followed.

## ANALYSIS

In three issues, Hawkins contends that the trial court erred in granting the Morrisons' motion for summary judgment and their request for attorney's fees. Hawkins urges that the trial court should have granted his motion for summary judgment and his request for attorney's fees.

### *Standard of Review*

We review the trial court's decision to grant summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). When both parties move for summary judgment on the same issues and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented and, if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *Dorsett*, 164 S.W.3d at 661 (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)).

We also review a trial court's interpretation of restrictive covenants *de novo*. *See Owens v. Ousey*, 241 S.W.3d 124, 129 (Tex. App.—Austin 2007, pet. denied); *Buckner v. Lakes of*

6

*Somerset Homeowners Assoc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied).

We interpret restrictive covenants in accordance with general rules of contract construction. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). "Our primary concern is to ascertain and give effect to the true intention of the parties as expressed in the instrument." *Owens*, 241 S.W.3d at 129. Although restrictive covenants should be liberally construed to give effect to their purposes and intent, *see* Tex. Prop. Code Ann. § 202.003(a) (West 2007), "[w]ords used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction, but will be given their commonly accepted meanings." *Buckner*, 133 S.W.3d at 297 (citation omitted).

### *Validity of the 2004 Declaration*

In his first issue, Hawkins challenges the trial court's summary judgment ruling in favor of the Morrisons that the declaration filed by Hawkins in 2004 was void. He contends that the plain language of the "Duration and Amendment" provision allows a reasonable time to extend the restrictions after they expired and that the amount of time at issue here was reasonable as a matter of law. The restrictions expired in May 2003, ballots were sent to property owners in December 2003, and Hawkins filed the declaration in March 2004.

We begin with the language of the "Duration and Amendment" provision of the original restrictions. The provision states:

> These restrictions shall be effective for a period of twenty-five (25) years from date hereof; however, during such period of time any one or all of such restrictions may be altered, amended or cancelled by Developer, his heirs or assigns, and three-fourths majority of the owners of the above described property, the owners of such property to be entitled to one vote for each Tract owned by them. At the expiration of twenty-five (25) years from date hereof, these restrictive covenants may be extended

7

for successive periods of ten (10) years each from and after said date, provided that three-fourths of the then owners of the above described property (the owners to be entitled to one (1) vote for each Tract owned by them) agree in writing to such extension. Any amendment, alteration, cancellation or extension of any of the foregoing restrictive covenants must be in writing and be filed with the County Clerk of Burnet, Texas, in order to be of any force or effect.

Hawkins agrees that, pursuant to this provision, the restrictions expired in May 2003 but contends that the plain language allows a reasonable time after May 2003 for the property owners to extend the restrictions. He focuses on the introductory phrase in the second sentence "At the expiration of twenty-five (25) years" and the subsequent phrase "from and after said date." Hawkins contends that the common meaning of "at"—"on or close to the time of"—supports that the provision was meant to allow a reasonable time to extend the restrictions and, because the provision does not provide a time period for when the original restrictions had to be extended after expiration, contract law requires that a reasonable amount of time be allowed.

We addressed similar language of a duration provision in *Owens v. Ousey*. 241 S.W.3d at 130. In that case, the deed specified that the restrictive covenants:

shall be in full force and effect for a period of twenty-five years. However, any restrictive covenant or covenants may be renewed at the end of said 25 year period, or may, at any time, be altered amended or cancelled by a majority vote of the owners of the property, each lot, whether owned by one or more persons, having and being entitled to one vote, on any question of alteration, amendment of [sic] cancellation of any restriction.

*Id*. The 25-year period expired two years before property owners approved and recorded "amendments" and an "extension" of the restrictive covenants. *Id*. The owners focused on the phase "at any time" in the duration provision to support their construction of the restrictions that would

8

have allowed amendment and extension after the restrictions expired. *Id.* We disagreed, concluding that the owners' construction would render the 25-year term superfluous and that:

> [T]he provision that the restrictions may be extended "*at* the end of said 25 year period" does not contemplate a time *two years after* the end of that period. (Emphasis added.) The fact that the property code requires restrictive covenants to be "liberally construed," . . . does not change our analysis—even under a liberal construction, the plain language of the deed states that the restrictive covenants are in effect for a 25-year period.

*Id*. (citing *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003)) (restrictive covenants are construed to avoid constructions that would render parts of the covenants superfluous or inoperative); *see also* Restatement (Third) of Property (Servitudes) § 7.2 (2000) (servitude "terminates when it expires by its terms"). Here the plain language of the declaration similarly states that the restrictions were "effective for a period of twenty-five (25) years."

Further, allowing an unspecified time period after expiration to extend the restrictions creates uncertainty and goes beyond the plain language of the duration provision. *See Buckner*, 133 S.W.3d at 297. The entitlement to vote to extend the restrictions is tied to the "then owners." If the second sentence in the duration provision allows the restrictions to be extended at some unspecified point after they have already terminated, who are the "then owners" entitled to vote? If the intent was to allow the "then owners" to extend the restrictions for a "reasonable time" after they had terminated, express language could have easily been included to set the parameters, such as a specific time period after expiration. *See id.*; *see also City of Pasedena v. Gennedy*, 125 S.W.3d 687, 696 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (terms of deed restrictions

9

included set time period for the "then owners of a majority of the lots affected by these restrictions" to file a written instrument to amend the restrictions).

In contrast, requiring the owners to vote to extend the restrictions in writing and to file such extension in the public records prior to termination creates certainty. *See Edwards v. Southhampton Extension Civic Club*, 540 S.W.2d 535, 536 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (property owners renewed restrictions for another 25-year period in month proceeding the date the initial term of 25 years expired); *see also Trethewey v. Collins*, No. 03-07-00311-CV, 2009 Tex. App. LEXIS 2059, at *12-14 (Tex. App.—Austin Mar. 27, 2009, no pet.) (mem. op.) (distinguishing *Owens* and upholding the amendments or modifications to restrictions at issue because "restrictions were still effective at the time the landowners sought to 'change the restrictions'").[1]

Moreover, interpreting the original restrictions to preclude extension here is consistent with the provision as a whole. *See Owens*, 241 S.W.3d at 130 (citing *City of San Antonio*, 111 S.W.3d at 29) (restrictive covenants are construed as a whole). The third sentence requires that an extension of the restrictions be in writing and filed in the public records. If the second sentence allows extension for some unspecified time period after termination, the purpose behind the filing

---

[1] Modern declarations have moved away from these types of "'drop dead' provisions" because of the problems that termination can create with common-interest communities. *See* Restatement (Third) of Property (Servitudes) § 6.10, comment b (2000). "Modern declarations either provide for indefinite duration, with provisions for amendment and termination under certain circumstances, or provide for automatic extension unless a specified percentage of owners take action to modify or terminate the declaration." *Id.*; *see, e.g.*, *VICC Homeowners' Ass'n v. Los Campeones, Inc.*, 143 S.W.3d 832, 836 (Tex. App.—Corpus Christi 2004, no pet.) (declaration automatically extended unless majority of owners agreed in writing and filed same).

10

of record requirement in the third sentence is defeated—property purchasers during the gap period would not have notice—which is what happened here. At the time the Morrisons purchased their property in December 2003, their property was not subject to the restrictions because they had expired. We overrule Hawkins's first issue.[2]

### *Validity of 2008 Declaration and Estoppel*

In his second issue, Hawkins contends that the trial court erred in denying his motion for summary judgment. In addition to contending that the declaration that he filed in 2004 was valid as a matter of law, Hawkins also sought summary judgment based upon his contentions that the declaration filed by the Morrisons and other property owners in 2008 was invalid and that the Morrisons' claims were barred by the doctrine of estoppel.

The "Declaration of the Expiration of Covenants, Conditions, and Restrictions for North West Oaks Subdivision" filed in 2008 by the Morrisons and other property owners states that the "undersigned signatures . . . compose 28 percent of the present owners of property located in said North West Oaks unrecorded subdivision" and declare that "they do not agree to the extension" of the original restrictions, their property "is not subject to any subdivision restrictions of any kind," and the association "has no right to take any action to enforce any subdivision restrictions or claimed assessments against them or their property." In its order, the trial court expressly found that this

---

[2] Given our conclusion that the trial court did not err in concluding that the declaration filed by Hawkins in 2004 was void because the original restrictions had terminated, we do not address the Morrisons' other arguments on this issue, such as whether the vote by alleged property owners complied with applicable procedures and whether the declaration was invalid because it recited that the property was still owned by the developer and provided that the ten-year period began to run from March 2004, not from May 2003, the date the original restrictions terminated.

11

declaration "correctly establishes the law pertaining to the restrictions and should not be cancelled and should remain in the Official Public Records of Burnet County, Texas." Given our interpretation of the original restrictions, we overrule this issue to the extent Hawkins sought summary judgment based upon his contention that the declaration filed in 2008 was invalid.

Hawkins also sought summary judgment based upon his affirmative defense of estoppel. To be entitled to summary judgment on this ground, he had to conclusively prove the elements of this affirmative defense. *See* Tex. R. Civ. P. 94, 166a(c); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999). Estoppel generally prevents a party from misleading another party to the other's detriment or to the misleading party's own benefit. *See, e.g.*, *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998) ("[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations."); *Trammel Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997) ("Promissory estoppel generally is a defensive doctrine in that it estops a promisor from denying the enforceability of [a] promise.").

Hawkins contends that the Morrisons are estopped from denying the validity of the restrictions because the evidence showed that they actively participated in the association's affairs and were aware of the restrictions from at least 2004 but waited to file suit claiming the restrictions were invalid until 2008. Hawkins relies upon the letters from John Morrison to the association in which he expresses concerns as to the association's management and the condition of the

12

subdivision, as well as the minutes from association meetings showing that John Morrison participated. John Morrison's participation with the association, however, does not equate with a promise or representation to be bound by restrictions that had terminated.

Further, the Morrisons' summary judgment evidence included John Morrison's affidavit and letters sent by the Morrisons to the court and Hawkins. John Morrison averred that he has "continuously been informing each and every President, Secretary and Treasurer of Northwest Oaks Property Owners Association that the Restrictions were not valid." He also averred that he has "never acquiesced or acknowledged the validity of the [declaration filed by Hawkins]." The letters express the Morrisons' belief that the declaration filed by Hawkins in 2004 was not valid. Given this evidence, we conclude that the trial court did not err in denying Hawkins' motion for summary judgment based upon estoppel. *See Rhone-Poulenc, Inc.*, 997 S.W.2d at 222-23.

We overrule Hawkins's second issue.[3]

*Attorney's Fees*

In his third issue, Hawkins contends that the trial court erred when it granted attorney's fees to the Morrisons because attorney's fees are not available for a cloud of title action and when it denied his request for attorney's fees because the Morrisons' fraudulent document claim was groundless and frivolous. *See* Tex. Civ. Prac. & Rem. Code. Ann. §§ 9.001, 10.001-.002 (West 2002); Tex. Gov't Code Ann. § 51.901 (West Supp. 2010). Both parties, however, sought relief

---

[3] In this issue, Hawkins also addresses the Morrisons' claim that the declaration that he filed in 2004 was fraudulent pursuant to the government code. *See* Tex. Gov't Code Ann. § 51.901 (West Supp. 2010). Because the trial court did not find that Hawkins violated this provision, we do not address this issue. *See* Tex. R. App. P. 47.1.

13

under the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-11 (West 2008). And a party proceeding under the UDJA may recover its attorney's fees. *See id*. § 37.009 (court may award "costs and reasonable and necessary attorney's fees as are equitable and just").

We review attorney's fees awarded pursuant to the UDJA under an abuse of discretion standard, and the trial court's order will not be reversed on appeal absent a clear showing that the court abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex. 1985). Here, the trial court found that "the sum of $2,600.00 is a fair and reasonable amount in attorney's fees to be awarded to Plaintiffs and judgment is hereby entered against Defendant, Ray Hawkins, Individually in the sum of $2,600.00." Although the trial court did not find that Hawkins violated the government code by filing the declaration in 2004, the trial court found in the Morrisons' favor as to the competing UDJA claims. On this record, we cannot conclude that the trial court abused its discretion in awarding the Morrisons attorney's fees in the amount of $2,600. We overrule Hawkins's third issue.

## CONCLUSION

Having overruled Hawkins's issues, we affirm the trial court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:  October 19, 2010